RECEIVED

JAN - 4 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| VERMILION BEHAVIORAL HEALTH CENTER | CIVIL ACTION NO: 09-1884 |
| VERSUS | JUDGE DOHERTY |
| KATHLEEN SEBELIUS, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

This action was brought by plaintiff, Vermilion Behavioral Health Center ("Vermilion"), "to appeal the unfavorable decision of the Medicare Appeals Council," which denied plaintiff, a provider of healthcare services, recoupment of Medicare claims for services provided to Medicare beneficiaries. [Doc. 1, ¶¶ 1, 2] Now pending before the Court are cross motions for summary judgment. [Docs. 19, 21] The first motion, filed by defendant, Kathleen Sebelius, Secretary of the United States Department of Health and Human Services ("Secretary"), moves for a judgment dismissing plaintiff's complaint with prejudice, arguing "there are no material facts in dispute and that Defendant is entitled to judgment as a matter of law." [Doc. 19, p.1] The second motion, filed by Vermilion, requests "summary judgment be granted . . . [,] reversing the decision of the Medicare Appeals Council (MAC) and the Medicare Administrative Law Judge (ALJ) . . . ." [Doc. 21, p.4]

**I. Factual and Procedural Background**

The following recitation of the factual and procedural background in this matter, as provided by defendant in her "Statement of Undisputed Facts" [Doc. 19-3], is not in dispute:

1

1. Vermilion is a Medicare certified provider of partial hospitalization services. (Pl.'s Compl. ¶ 7.)

2. From April 1, 2004 through February 28, 2005, Vermilion provided medical treatment to four Medicare beneficiaries, E.T., B.P., J.D., and P.A. *Id.*

3. The claims for these four beneficiaries were originally paid by TriSpan Health Services (TriSpan), the Medicare Contractor. Subsequently, AdvanceMed Corporation (AdvanceMed), a Medicare Program Safeguard Contractor (PSC), informed Vermilion that it had conducted a post-payment review of its claims for payment. (R. at 00067-69.)

4. Based on its review, AdvanceMed concluded that earlier initial determinations resulted in Vermilion being overpaid for services which were not medically necessary and which did not meet Medicare coverage criteria. (R. at 00067, 00069.)

5. In a letter dated October 25, 2006, AdvanceMed advised Vermilion that TriSpan would issue a notice of determination and appeal rights. (R. at 00067.)

6. On December 1, 2006, TriSpan issued a notice to Vermilion stating that it had been overpaid for dates of service from March 1, 2004 through February 28, 2005, in the total amount of $359,976. (R. at 00064-66.)

7. TriSpan further advised Vermilion that Medicare would recoup the overpayment amounts from pending and future claims and provided Vermilion with its appeal rights. (R. at 00065-66.)

8. Vermilion filed a request for reconsideration with the Qualified Independent Contractor (QIC), which found that Vermilion did not comply with the Medicare documentation guidelines and the applicable local coverage determination (LCD). (Pl.'s Compl. ¶ 9; R. at 00314.)

9. On appeal, the administrative law judge (ALJ) reversed the QIC's decision and rendered a fully favorable decision for Vermilion. (Pl.'s Compl. ¶10; R. at 00159- 193.)

10. In a decision dated March 14, 2008 (March decision), the ALJ determined that the FI did not have good cause to reopen its initial determination. (Pl.'s

Compl. ¶10; R. at 00159-197.)[1]

. . . .

12. The QIC appealed the ALJ's March decision to the MAC ["Medicare Appeals Council"]. (Pl.'s Compl. ¶10.)

13. The MAC held that, under the governing regulations, "neither the ALJ, nor [the MAC], may modify or reverse a contractor's overpayment determination on the basis that the contractor improperly re-opened the original determinations or decisions that were the basis of the overpayment." (R. at 00135.)

14. The MAC vacated the March decision and remanded it to the ALJ. (R. at 00129-136.)

15. On remand, the ALJ acknowledged his lack of authority to review the FI's decision to reopen and rendered a decision on the merits of the overpayment determination. (R. at 00025-33.)

16. In a decision dated December 16, 2008 (December decision), the ALJ found that Vermilion failed to establish that the partial hospitalization services provided to four Medicare beneficiaries were reasonable and necessary. (Pl.'s Compl. ¶11; R. at 00025- 33.) The ALJ further found that Vermilion was liable for the non-covered services.

. . . .

18. Vermilion appealed the December decision to the MAC. The MAC upheld the ALJ's determination and found that the claims did not meet the relevant requirements for Medicare reimbursement. (R. at 00003-11.)

. . . .

20. Beneficiary E.T. did not participate in treatment for a minimum of three hours per day four days per week for the week of June 28, 2004. (R. at

---

[1] The parties dispute whether the ALJ made any findings regarding the merits of the overpayment determination in his initial decision, with the Secretary arguing no findings on the merits were made, and Vermilion arguing to the contrary. [Doc. 19-3, ¶11; Doc. 21, ¶1] The Court finds Vermilion is correct. In each decision regarding the four beneficiaries at issue, the ALJ stated as follows: "The psychiatric treatment provided on . . . were [sic] medically reasonable and necessary and a covered service." [R. at 163, 172, 181, 190] While it is true the ALJ set forth no factual findings in support of his conclusion, nevertheless, his conclusion constitutes a decision on the merits of the overpayment determination.

00009; 00249-252; 00397.)[2]

21. Beneficiary B.P. did not participate in treatment for a minimum of three hours per day four days per week during the weeks of February 7, 2005 and February 14, 2005. (R. at 00009; 02213-2214; 02432-2433.)[3]

22. The record evidenced that Beneficiary P.A was absent for two days during the period of April 12, 2004 through April 16, 2004. *Id.*[4]

23. The record is devoid of any evidence establishing that Vermilion provided partial hospitalization services to Beneficiaries E.T., B.P., and P.A. during the afore-described time periods in accordance with the requirements of LCD 1317.

[Doc. 19-3]

Finally, with regard to the denial of reimbursement for services provided to beneficiary J.D., the Secretary argues "there was either no documentation or inadequate [sic] to establish that Beneficiary J.D. required partial hospitalization level of care for December 6-10, 2004 and February 14-28, 2005," whereas plaintiff argues, "ample evidence exists justifying the medical necessity of such services." [Doc. 19-3, ¶24 (citing R. At 00009-10; 00963-964; 00968-990); Doc. 21, ¶6 (citing R. at 00608 - 01116)].

---

[2]While plaintiff agrees with this statement, it argues it is nevertheless entitled to reimbursement, "as ample evidence exists justifying the shorter frequency due to the beneficiary's discharge." [Doc. 21, ¶3 (citing R. 00249)].

[3]While plaintiff agrees with this statement, it argues it is nevertheless entitled to reimbursement, "as ample evidence exists justifying the shorter frequency due to the beneficiary's scheduled appointment at the Social Security Administration Offices and the beneficiary's discharge." [Doc. 21, ¶4 (citing R. 02432-02433)].

[4]While plaintiff agrees with this statement, it argues it is nevertheless entitled to reimbursement, "as ample evidence exists justifying the shorter frequency due to the beneficiary's scheduled appointments at the doctor's office to treat the beneficiary's sore throat and hoarseness." [Doc. 21, ¶5].

## II. Analysis

### A. Beneficiaries E.T., B.P. and P.A.

The Secretary, the ALJ and the MAC denied reimbursement to plaintiff for beneficiaries E.T., B.P. and P.A., finding the requirements of the Fiscal Intermediary's local coverage determination ("LCD") L1317 had not been met. L1317 (which was retired effective March 31, 2010) applied to partial hospitalization services performed on the dates of service at issue. [Doc. 19-1, p.14] In pertinent part, the LCD states: "Three hours per day at four days per week is the minimum level of active treatment that is considered reasonable and necessary for a patient to participate in a partial hospitalization program." [Doc. 19-1, pp.14-15] Defendant argues because the requirements of L1317 were not met, the decision of the court below was correct, and Vermilion is not entitled to reimbursement for these claims.

On the other hand, plaintiff argues the Medicare Benefit Policy Manual in effect during the pertinent time frame did not contain a requirement that the patient must participate "three hours per day at four days per week," as did the LCD. Rather, the Medicare Benefit Policy Manual in effect during the pertinent time frame provided, "Patients admitted to a PHP must be under the care of a physician who certifies the need for partial hospitalization and require a minimum of 20 hours per week of therapeutic services, **as evidenced by their plan of care**." [Doc. 33-1, p.5 (emphasis added)][5]

---

[5]CMS "clarified" the Code of Federal Regulations, effective January 1, 2009, in conformity with the portion of the Medicare Benefit Policy Manual discussed above. Of interest, counsel for defendant states the following in its memorandum in support of summary judgment:

> Effective January 1, 2009, the Secretary revised the hospital outpatient prospective payment system to implement certain statutory requirements . . . . In an effort to improve the level of service provided to a patient, the Secretary revised the patient eligibility criteria set forth in 42 C.F.R. § 410.43 to add a minimum requirement of 20 hours of

5

As noted by the government in its memorandum in support of summary judgment:

> An ALJ and the MAC are bound by statutes, regulations, NCDs, and Rulings issued by CMS. 42 C.F.R. §§ 405.1060(a) (4), 405.1063 (2010). Neither an ALJ nor the MAC is bound by contractor LCDs or CMS program guidance such as program memoranda and manual instructions, "but will give substantial deference to these policies if they are applicable to a particular case." 42 C.F.R. § 405.1062(a) (2010). **An ALJ or the MAC must explain their reasoning for not following an LCD or program guidance in a particular case.** 42 C.F.R. § 405.1062(b) (2010).

[Doc. 19-1, pp.14-15 (emphasis added)]

In this matter, the court below did not explain why it declined to follow the guidance contained in the applicable Medicare Benefit Policy Manual, choosing instead to follow the guidance contained in the LCD. Again, "If an ALJ or MAC declines to follow a policy in a

---

> service per week as evidenced by the patient's plan of care instead of the patient's actual therapy hours. *Id.* at 68695. *Under the revised patient eligibility criteria there is no requirement for a minimum number of days within the 20 hour week and the 20 hours of service must be evidenced in the patient's plan of care rather than by actual therapy hours.*

[Doc. 31, p.4 (emphasis added)] While counsel for defendant argues in its memorandum that the 2009 revisions are not retroactive, the Agency (*i.e.* the Centers for Medicare & Medicaid Services) appears to be of the opinion that the amendments merely clarified existing regulations:

> We note that the eligibility requirements that we proposed to codify in the regulations at Sec. 410.43 are not new, and are currently a part of the operational policy that is contained in the Medicare Benefits Policy Manual, Pub. 100-02, Chapter 6, Section 70.3. . . . **Therefore, . . . in this final rule . . ., we are clarifying that the patient eligibility requirement that patients require 20 hours of therapeutic services is evidenced in a patient's plan of care rather than in the actual hours of therapeutic services a patient receives.** The intent of this eligibility requirement is that for most weeks we expect attendance conforming to the patient's plan of care. We recognize that there may be times at the beginning (or end) of a patient's transition into (or out of) a PHP where the patient may not receive 20 hours of therapeutic services. For example, if a patient begins treatment on a Wednesday and receives services for the remainder of that week (Thursday and Friday), that patient's first week may not include 20 hours of therapeutic services. However, we expect that for generally all weeks the PHP patients are receiving the amount and type of services identified in the plan of care.

73 Fed. Reg. 68695 (emphasis added).

particular case, the ALJ or MAC decision must explain the reasons why the policy was not followed." 42 CFR § 405.1062(b). Accordingly, this matter is REMANDED to the court below to address the guidance contained in the Medicare Benefit Policy Manual in effect during the pertinent time frame.

### B. Beneficiary J.D.

With regard to beneficiary J.D., the Secretary denied payment, concluding J.D. did not meet the criteria for partial hospital services, because: the documentation did not support a finding that treatment at the partial hospitalization program level was warranted; outpatient therapy would have been more appropriate than partial hospitalization; the chart notes from December 6, 2004 forward failed to document the need for continued PHP services; and plaintiff failed to document psychiatric symptomatology which would require psychiatric hospitalization if PHP services were denied in any of their notes. [Rec. at 0153-0156] Upon review, the ALJ found the services provided by Vermilion were not reimbursable, reasoning, "The documentation in the record is insufficient to support of [sic] finding that without partial hospitalization the beneficiary would have required inpatient psychiatric hospitalization and that partial hospitalization services prevented re-hospitalization." [Rec. at 00033] On appeal, the MAC agreed with the foregoing findings. [Rec. 00009-00010]

"The findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C.A. § 405(g). The Fifth Circuit has instructed:

> We will not reverse the Secretary's decision unless it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole. Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 215 (5th Cir. 1996) (footnotes omitted) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. In applying this standard, we may not re-weigh the evidence or substitute our judgment for that of the Commissioner." *Harris v. Apfel*, 209 F.3d 413, 417 (5th cir. 2000) (footnotes omitted).

In its appeal to this Court, plaintiff points to certain notes in J.D.'s records, dated December 8, 2004, to support its argument that partial hospitalization services were medically necessary. It then requests this Court "review . . . the entirety of the medical records," and make a finding contrary to that of the Secretary. Following a review of the medical records, this Court does not find "no credible evidentiary choices or medical findings support [the Secretary's] decision." *Harris* at 417. Accordingly, the Court finds the Secretary's decision with regard to beneficiary J.D. is supported by substantial evidence, and summary judgment in favor of defendant is warranted with regard to reimbursement for the claim on behalf of beneficiary J.D.

### C. Sampling Methodology

In its complaint, plaintiff states as follows:

### Error Number 4

19. Finally, to the extent relevant in that the FI has failed to recalculate the overpayment amount despite the fact that the deadline for doing so has passed, the Plaintiff respectfully reserves its right to challenge the FI's sampling methodology and extrapolation calculations.

[Doc. 1, ¶ 19]

Defendant argues because no challenge was made to the Secretary regarding the FI's "sampling methodology and extrapolation calculations," plaintiff failed to exhaust its administrative remedies, and therefore this Court is without jurisdiction to hear the challenge. In response, plaintiff merely reiterates that it wishes to "reserve[] its rights to appeal any future calculation of the

overpayment including the application of any extrapolation methodology." [Doc. 21, p. 14]

The Court agrees with defendant: because plaintiff failed to exhaust its administrative review, this Court is without jurisdiction to hear any challenge to the FI's sampling methodology and extrapolation calculations. Accordingly, summary judgment in favor of defendant is warranted on this claim.

## II. Conclusion

In light of the foregoing, the motions for summary judgment [Docs. 19, 21] are GRANTED IN PART and DENIED IN PART. Specifically, plaintiff's claims for reimbursement on behalf of beneficiaries E.T., B.P. and P.A. are REMANDED to the court below to address the guidance contained in the Medicare Benefit Policy Manual in effect during the pertinent time frame. With regard to beneficiary J.D. and the FI's sampling methodology and extrapolation calculations, the decision of the Secretary is AFFIRMED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___4___ day of January, 2012.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE